## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**GLENN M. HILL**                                        **CIVIL ACTION**

**versus**                                                      **NO. 12-369**

**ROBERT TANNER, WARDEN**                     **SECTION: "C" (1)**

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Glenn M. Hill, is a state prisoner incarcerated at the B.B. "Sixty" Rayburn Correctional Center, Angie, Louisiana. On February 18, 2009, he pleaded guilty to obscenity and aggravated burglary under Louisiana law. On the same date, he was sentenced to a term of three years on the obscenity conviction and to a concurrent term of twenty-five years on the aggravated burglary conviction, with both sentences to be served without benefit of probation, parole, or suspension of sentence.[1] He did not appeal either his convictions or sentences.

---

[1] State Rec., Vol. III of V, transcript of February 18, 2009.

On or about February 23, 2009, petitioner filed with the state district court a motion to correct illegal sentence.[2] That motion was denied on March 10, 2009.[3] However, on October 12, 2009, the Louisiana First Circuit Court of Appeal granted his related writ application and amended his sentences to delete the prohibition against parole, probation, or suspension of sentence.[4]

On or about February 4, 2010, petitioner filed with the state district court an application for post-conviction relief.[5] That application was denied on July 16, 2010.[6] His related writ applications were then denied by the Louisiana First Circuit Court of Appeal on November 22, 2010,[7] and by the Louisiana Supreme Court on October 21, 2011.[8]

On or about April 1, 2011, petitioner filed with the state district court a motion for an out-of-time appeal, which was denied on April 26, 2011.[9] His related writ applications were

---

[2] State Rec., Vol. III of V.

[3] State Rec., Vol. V of V, transcript of March 10, 2009; State Rec., Vol. III of V, minute entry dated March 10, 2009.

[4] State v. Hill, No. 2009 KW 1452 (La. App. 1st Cir. Oct. 12, 2009); State Rec., Vol. III of V.

[5] State Rec., Vol. III of V.

[6] State Rec., Vol. IV of V, Reasons dated July 16, 2010.

[7] State v. Hill, No. 2010 KW 1359 (La. App. 1st Cir. Nov. 22, 2010); State Rec., Vol. IV of V.

[8] State ex rel. Hill v. State, 73 So.3d 377 (La. 2011) (No. 2010-KH-2719); State Rec., Vol. IV of V.

[9] State Rec., Vol. IV of V.

likewise denied by the Louisiana First Circuit Court of Appeal on August 29, 2011,[10] and by the Louisiana Supreme Court on May 25, 2012.[11]

In the interim, on or about May 13, 2011, petitioner filed with the state district court a motion to withdraw his guilty plea, which was denied on May 16, 2011.[12] Petitioner's related writ applications were then also denied by the Louisiana First Circuit Court of Appeal on August 29, 2011,[13] and by the Louisiana Supreme Court on May 18, 2012.[14]

While those state proceedings were still ongoing, petitioner filed the instant federal application for *habeas corpus* relief on January 30, 2012.[15] The state filed a response conceding that the federal application is timely and that petitioner exhausted his remedies in the state courts.[16] On June 6, 2012, upon the retirement of United States Magistrate Judge Louis Moore, this matter was transferred to the undersigned United States Magistrate Judge for the issuance of a Report and Recommendation.[17]

---

[10] State v. Hill, No. 2011 KW 1062 (La. App. 1st Cir. Aug. 29, 2011); State Rec., Vol. IV of V.

[11] State *ex rel.* Hill v. State, No. 2011-KH-2070, 2012 La. LEXIS 1619 (La. May 25, 2012).

[12] State Rec., Vol. IV of V.

[13] State v. Hill, No. 2011 KW 1292 (La. App. 1st Cir. Aug. 29, 2011); State Rec., Vol. IV of V.

[14] State *ex rel.* Hill v. State, No. 2011-KH-2053, 2012 La. LEXIS 1504 (La. May 18, 2012); State Rec., Vol. IV of V.

[15] Rec. Doc. 1.

[16] Rec. Doc. 10, pp. 5-7.

[17] Rec. Doc. 15.

## I.  Motions to Amend the Petition

Petitioner filed two motions to amend the petition to add additional claims on or about May 24, 2012, and June 1, 2012.[18]  The state filed no opposition to the those motions. Because the additional claims lack merit, the state is not prejudiced if the proposed amendments are allowed.  Accordingly, the undersigned recommends that the motions to amend be granted and relief denied for the reasons explained herein.

## II.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant

---

[18]  Rec. Docs. 13 and 14.

shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law or mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir.) (internal quotation marks, ellipses, brackets, and footnotes omitted), cert. denied, 131 S.Ct. 294 (2010).

Regarding the "unreasonable application" clause, the United States Supreme Court has explained:

> [A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways. First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court

> decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Williams v. Taylor, 529 U.S. 362, 407 (2000). The Supreme Court has noted that the focus of this inquiry "is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams that an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694; see also Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."), cert. denied, 132 S.Ct. 1537 (2012).

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court recently held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 131 S.Ct. 770, 786-87 (2011) (citations omitted; emphasis added).

### III.  Petitioner's Claims

### A.  Original Petition

### 1.  Ineffective Assistance of Counsel

In his original petition for federal *habeas corpus* relief, petitioner claimed that he received ineffective assistance of counsel due to a conflict with his attorney, Douglas Brown.

The United States Supreme Court has established a two-prong test for evaluating claims of ineffective assistance of counsel.  A petitioner seeking relief must demonstrate both that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 697 (1984).  A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."  Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.  Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case,

viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to satisfy the prejudice prong of an ineffective assistance of counsel claim in a case involving a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also James v. Cain, 56 F.3d 662, 667 (5th Cir. 1995).

In the state post-conviction proceedings, the state district court denied petitioner's ineffective assistance of counsel claim on the merits,[19] and his related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal[20] and the Louisiana Supreme Court.[21] Because such a claim presents a mixed question of law and fact, this Court must defer to the state court decision rejecting petitioner's claim unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Moreover, the United States Supreme Court recently explained that, under the AEDPA, federal *habeas corpus* review of ineffective assistance of counsel claims is in fact *doubly* deferential:

---

[19]  State Rec., Vol. IV of V, Reasons dated July 16, 2010.

[20]  State v. Hill, No. 2010 KW 1359 (La. App. 1st Cir. Nov. 22, 2010); State Rec., Vol. IV of V.

[21]  State *ex rel.* Hill v. State, 73 So.3d 377 (La. 2011) (No. 2010-KH-2719).

The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.

A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

Harrington v. Richter, 131 S.Ct. 770, 785-86 (2011) (citation omitted). The Supreme Court then explained:

Surmounting Strickland's high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an

attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. *The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.*

<u>Id</u>. at 788 (citations omitted; emphasis added). This Court finds that, under these stringently deferential standards, it simply cannot be said that relief is warranted in the instant case with respect to petitioner's ineffective assistance of counsel claim for the following reasons.

The "conflict" in this case arose because Brown revealed to the trial judge that petitioner had threatened one of the state's witnesses. On February 16, 2009, Brown obtained the following statement from Cherie L. Drawdy:

On February 11, 2009, I got a call on my cell phone ... from somebody using a pre-paid phone card and saying he was "Johnny Castaras." When I took the call, it turned out to be my ex-husband Glenn Hill. Glenn was very angry and said he had been to court that day and found out from his lawyer that I was going to testify for the State. Glenn told me that if I testified, he was going to come after me and my husband when he got out of jail and that I would regret it. Glenn and I were together for several years, and I took what he said to me as a threat to my personal safety.[22]

---

[22] State Rec., Vol. III of V, statement from Cherie L. Drawdy dated February 16, 2009.

Brown then informed petitioner that he was turning this information over to the trial judge, stating in pertinent part:

> This is to advise you that, pursuant to Rules of Professional Conduct Rule 3.3(b), Candor Toward the Tribunal, I am required to inform the court of recent illegal actions taken by you and which you have used my representation of you to perpetuate. I advised you on or about February 11, 2009 that your ex-wife was identified as a witness of the State. On that day, according to your ex-wife Cherie L. Darby [sic], you telephoned her from a pre-paid telephone card and threatened her safety and that of her husband if she testified at your trial. She has given me a written statement to this effect which I am required to submit to Judge Brenda Ricks.[23]

Brown did in fact provide the information to the trial court and requested that he be allowed to withdraw from the case. The trial judge denied that request.[24]

While petitioner argues that counsel's actions created an impermissible "conflict of interest," this Court emphatically rejects that argument. Petitioner's threat to a witness constituted a criminal act, La.Rev.Stat.Ann. § 14:130.1(A)(2)(a), and Brown had an ethical obligation to "take reasonable remedial measures, including, if necessary, disclosure [of the criminal conduct] to the tribunal," Louisiana Rules of Professional Conduct Rule 3.3(b). A criminal defendant's right to effective assistance of counsel does not encompass a right to forbid counsel from disclosing a defendant's witness tampering. See Nix v. Whiteside, 475 U.S. 157, 174 (1986) ("A defendant who informed his counsel that he was arranging to bribe or threaten witnesses or members of the jury would have no 'right' to insist on counsel's assistance or silence. Counsel would not be limited to

---

[23] State Rec., Vol. III of V, memorandum to petitioner from Douglas Brown dated February 16, 2009.

[24] State Rec., Vol. V of V, transcript of February 17, 2009, pp. 2-7.

advising against that conduct. An attorney's duty of confidentiality, which totally covers the client's admission of guilt, does not extend to a client's announced plans to engage in future criminal conduct."). While the desires of the criminal defendant on such a matter are contrary to the ethical obligations of his attorney, this situation is not remotely the kind of "conflict of interest" which would constitute ineffective assistance of counsel. See id. at 176. As the Supreme Court has explained:

> If a "conflict" between a client's proposal and counsel's ethical obligation gives rise to a presumption that counsel's assistance was prejudicially ineffective, every guilty criminal's conviction would be suspect if the defendant had sought to obtain an acquittal by illegal means. Can anyone doubt what practices and problems would be spawned by such a rule and what volumes of litigation it would generate?

Id.

If petitioner had informed Brown that he intended to, *but had not yet*, threatened Drawdy, then the situation here might well be different. In that circumstance, some lesser remedial action by Brown, such as dissuading petitioner by informing him that such a threat would require Brown to withdraw and inform the court, might have been appropriate. However, that was not possible here. By the time that Brown became aware of the situation, the witness tampering had already occurred. At that point, it was Brown's responsibility as "an ethical lawyer, as an officer of the court and a key component of a system of justice, dedicated to a search for truth," id. at 174, to disclose what had transpired. This Court can envision no other option still open to Brown which would have satisfied his ethical duty and protected the integrity of the proceeding. It therefore

follows that Brown did not breach a recognized professional duty and, accordingly, petitioner was not deprived of his right to counsel under the Sixth Amendment. See id. at 175.

        The Court further notes that petitioner's claim also fails for an additional reason. As previously noted, to prevail on his ineffective assistance of counsel claim, he must show that there is a reasonable probability that, but for counsel's actions, he would not have pleaded guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also James v. Cain, 56 F.3d 662, 667 (5th Cir. 1995). Petitioner has not even made such a representation here, much less shown as much. Further, even if he had made such a representation, this Court would not find it credible, in light of the fact that petitioner benefitted enormously from the plea agreement. As part of that agreement, petitioner was allowed to plead guilty to a reduced charge of obscenity, La.Rev.Stat.Ann. § 14:106, rather than to proceed to trial on the significantly more serious charge of indecent behavior with a juvenile, La.Rev.Stat.Ann. 14:81, and he was assured that the resulting sentence would run concurrently with his sentence for the aggravated burglary conviction. It was further agreed that the state would not charge petitioner as a multiple offender with respect to either of those convictions. It was further agreed that if any other charge resulted from the proceeding, e.g. a charge of obstruction of justice for threatening the state's witness, any sentence resulting from that charge would also run concurrently and, again, he would not be charged as a multiple offender.[25] In light of those exceedingly generous concessions by the state, this Court would find utterly incredible any representation that, but for counsel's actions, petitioner would not have pleaded guilty and would have insisted on going to trial.

_____

[25] State Rec., Vol. V of V, transcript of February 18, 2009, pp. 5-6.

In light of the foregoing, the undersigned finds that petitioner has failed to show that the state court's decision rejecting his ineffective assistance claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, under the doubly deferential standards of review mandated by the AEDPA, this claim should be denied.

### 2. Failure to Hold a "Garcia Hearing"

In his original federal application, petitioner also claimed that his rights were violated by the trial court's failure to hold a "Garcia hearing." The United States Fifth Circuit Court of Appeals has explained:

> The Sixth Amendment right to counsel includes the "right to representation that is free from any conflict of interest." United States v. Vaquero, 997 F.2d 78, 89 (5th Cir. 1993). "A conflict exists when defense counsel places himself in a position conducive to divided loyalties." United States v. Carpenter, 769 F.2d 258, 263 (5th Cir. 1985). If a defendant chooses to proceed with representation by counsel who has a conflict of interest, a district court must conduct what is commonly known as a "Garcia hearing" to ensure a valid waiver by the defendant of his Sixth Amendment right. United States v. Garcia, 517 F.2d 272, 278 (5th Cir. 1975), abrogated on other grounds by Flanagan v. United States, 465 U.S. 259, 263 & n.2, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984). During the hearing, the district court must "ensure that the defendant (1) is aware that a conflict of interest exists; (2) realizes the potential hazards to his defense by continuing with such counsel under the onus of a conflict; and (3) is aware of his right to obtain other counsel." United States v. Greig, 967 F.2d 1018, 1022 (5th Cir. 1992). A district court need only conduct a Garcia hearing if there is an actual conflict of interest. Carpenter, 769 F.2d at 263.

United States v. Garcia-Jasso, 472 F.3d 239, 243 (5th Cir. 2006).

The Fifth Circuit mandated the use the <u>Garcia</u> procedures in criminal proceedings in the *federal,* not state, courts.[26] This Court is unaware of any case directly applying <u>Garcia</u> in the context of a *habeas* review of a state court conviction. Nevertheless, even if the Court assumes that, as a matter of federal law, state courts are under an obligation to hold such hearings in some circumstances,[27] petitioner's case is not among them. As noted, even in federal proceedings, no such hearing is required unless there is in fact an actual "conflict of interest." For the reasons previously explained, no such "conflict of interest" existed in this case. Further, even in federal proceedings,

---

[26] However, this Court notes that Louisiana has adopted somewhat analogous, if perhaps more limited, procedures as a matter of state law. <u>See</u> <u>State v. Odle</u>, 834 So.2d 483, 499 (La. App. 3rd Cir. 2002); <u>see also</u> <u>State v. Cisco</u>, 861 So.2d 118, 133 (La. 2003).

[27] The United States First Circuit Court of Appeals has observed:

> The Supreme Court has held that the trial judge bears the "serious and weighty responsibility ... of determining whether there is an intelligent and competent waiver by the accused," and "must investigate as long and as thoroughly as the circumstances of the case before him demand" before accepting the waiver. <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 244 & n.32, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (citing <u>Von Moltke v. Gillies</u>, 332 U.S. 708, 723-24, 68 S.Ct. 316, 92 L.Ed. 309 (1948)). However, this obligation is generally and broadly stated, and there are no clearly established Supreme Court decisions bearing directly on the constitutional requirements for an adequate conflict-waiver colloquy. <u>See</u> 21A Am.Jur.2d. Criminal Law § 1153 (2008) ("no particular cautionary instruction or form [by court] is required to ensure the validity of [defendant's] waiver" of right to counsel). Rather, the Supreme Court offers only general guidance as to the requirements for a voluntary waiver. <u>See, e.g.,</u> <u>Edwards v. Arizona</u>, 451 U.S. 477, 488, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) ("the determination of whether there has been an intelligent waiver of right to counsel must depend ... upon the particular circumstances surrounding the case, including the background, experience, and conduct of the accused" (quoting <u>Johnson v. Zerbst</u>, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938))).

<u>Yeboah-Sefah v. Ficco</u>, 556 F.3d 53, 68-69 (1st Cir. 2009).

a <u>Garcia</u> hearing is unnecessary where, as here, the criminal defendant himself brought the alleged conflict to the court's attention in an effort to secure new counsel with the intent of exercising his right to conflict-free representation. <u>United States v. Rogers</u>, 74 Fed. App'x 419, 420 (5th Cir. 2003).

For these reasons, it is clear that no such hearing was required in the instant case, and, therefore, petitioner's rights obviously were not violated by the trial court's failure to hold one. Accordingly, this claim should be rejected.

### B. First Amendment to Petition

In the first amendment to his federal application, petitioner raised the same claim he asserted in his state court motion to withdraw his guilty plea, i.e. that his guilty pleas were invalid. The state district court denied that claim.[28] The Louisiana First Circuit Court of Appeal then likewise denied relief, indicating by its citation to La. Code Crim. P. art. 930.8 that the motion had been untimely filed.[29] The Louisiana Supreme Court then denied relief without assigning additional reasons.[30]

Because the Court of Appeal, in the last reasoned state court judgment, found that petitioner's claim was barred by La. Code Crim. P. art. 930.8, it appears that the claim would be procedurally barred in this proceeding. <u>See, e.g.</u>, <u>Glover v. Cain</u>, 128 F.3d 900, 902 (5th Cir. 1997);

---

[28] State Rec., Vol. IV of V.

[29] <u>State v. Hill</u>, No. 2011 KW 1292 (La. App. 1st Cir. Aug. 29, 2011); State Rec., Vol. IV of V.

[30] <u>State *ex rel.* Hill v. State</u>, No. 2011-KH-2053, 2012 La. LEXIS 1504 (La. May 18, 2012); State Rec., Vol. IV of V.

see also Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground."). However, because the claim is so utterly lacking in merit for the reasons set forth herein, it is recommended that it simply be denied on that basis.[31]

"It is beyond dispute that a guilty plea must be both knowing and voluntary." Parke v. Raley, 506 U.S. 20, 28 (1992). The terms "knowing" and "voluntary" "are frequently used interchangeably, although, strictly speaking, the terms embody different concepts." United States v. Hernandez, 234 F.3d 252, 254 n.3 (5th Cir. 2000). A "knowing" plea is one where the defendant is aware of the direct consequences of his plea, whereas a "voluntary" plea is one not induced "by threats, misrepresentation, unfulfilled promises, or promises of an improper nature." Id.

When a *habeas* petitioner challenges the validity of his plea, he carries the burden of proving his plea was not in fact knowing and voluntary. See, e.g., Hines v. Louisiana, 102 F. Supp. 2d 690, 694 (E.D. La. 2000). For the following reasons, it is clear that he has not met his burden of proof in this case.

Petitioner's claim is that his plea was involuntary because it was induced by a threat of additional prosecution. As previously noted, petitioner threatened a witness, and the state was considering prosecuting him for that act under La.Rev.Stat.Ann. § 14:130.1(A)(2)(a). However, as

---

[31] A federal court need not decide whether a claim is procedurally barred if the claim clearly fails on the merits. Glover v. Hargett, 56 F.3d 682, 684 (5th Cir. 1995); Wiley v. Puckett, 969 F.2d 86, 104 (5th Cir. 1992); Corzo v. Murphy, Civ. Action No. 07-7409, 2008 WL 3347394, at * 1 n.5 (E.D. La. July 30, 2008); Lee v. Cain, Civ. Action No. 06-9669, 2007 WL 2751210, at *9 (E.D. La. Sept. 18, 2007).

part of the plea agreement, the prosecutor offered the following concession: "[I]f any other charges are to come from this trial or this plea, the state would agree to have those charges run concurrently with [the sentences in the instant case] and agrees not to file a separate habitual offender petition against Mr. Hill on that count as well."[32] Once petitioner agreed to plead guilty to the instant charges, the state elected not to pursue the additional charge.

The Court can easily dispose of this claim. "[T]hreats regarding additional charges or enhanced penalties are accepted practices in plea negotiations." United States v. Worth, 227 Fed. App'x 394, 396-97 (5th Cir. 2007). There clearly was probable cause to bring the an additional criminal charge against petitioner, and the fact that he prudently chose to plead guilty rather than face a consecutive sentence for such a charge in no way rendered his plea coerced or involuntary. See, e.g., United States v. Cianfarano, 278 Fed. App'x 62, 64 (2nd Cir. 2008). Simply put: a prosecutor does not violate a criminal defendant's constitutional rights by presenting him "with the unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution." Bordenkircher v. Hayes, 434 U.S. 357, 365 (1978).

Petitioner also argues that his pleas were involuntary because he was misinformed of the penalty he faced if he proceeded to trial. Petitioner was told that he faced a life sentence if he was ultimately convicted of a "sex offense."[33] The record reflects that he had at least two

---

[32] State Rec., Vol. V of V, transcript of February 18, 2009, pp. 5-6.

[33] State Rec., Vol. V of V, transcript of February 17, 2009, pp. 5-6.

previous convictions for sex offenses,[34] and, prior to the instant charge being reduced as part of the plea agreement, he was charged with indecent behavior with a juvenile under La.Rev.Stat.Ann. § 14:81.[35] Pursuant to Louisiana law, such offenders under certain circumstances are subject to life imprisonment. La.Rev.Stat.Ann. § 15:529.1(A)(3)(b). Petitioner has not shown that he would have been ineligible for a life sentence under that provision if he had been convicted as charged.[36]

In light of the foregoing, this claim should be denied.

## C. Second Amendment to Petition

In the second amendment to his federal application, petitioner claimed that the state courts wrongly denied his motion for an out-of-time appeal. That motion was denied by the state

---

[34] See State Rec. Vol. III of V, Notice of Intent to Have Defendant Sentenced as a Serial Sexual Offender.

[35] State Rec., Vol. I of V, bill of information. The bill had originally charged petitioner with attempted indecent behavior with a juvenile, but the charge was amended on February 11, 2008. State Rec., Vol. I of V, minute entry dated February 11, 2008.

[36] Petitioner also argues that he was incorrectly informed that he faced a forty-year sentence if charged and convicted of obstruction of justice. State Rec., Vol. V of V, transcript of February 17, 2009, p. 6. He contends that, under La.Rev.Stat.Ann. § 14:130.1(B)(2), he would in reality have faced a sentence of no more than twenty years. Of course, he was never charged with, much less pleaded guilty to, that offense. However, in any event, even if subsection (B)(2) was the applicable subsection, petitioner is forgetting that he was a multiple offender. A second offender under subsection (B)(2) would in fact face *twice* the maximum sentence, i.e. forty years. La.Rev.Stat.Ann. § 15:529.1(A)(1). Therefore, again, he has not shown that he was given incorrect information.

district court on April 26, 2011,[37] and his related writ applications were then likewise denied by both the Louisiana First Circuit Court of Appeal[38] and the Louisiana Supreme Court.[39]

To the extent that petitioner is simply arguing that the state courts erred in denying his motion, that claim is not cognizable in this proceeding. Even if the state courts had erred, federal *habeas corpus* relief cannot be granted to remedy an error in state *post-conviction* proceedings. As the United States Fifth Circuit Court of Appeals has explained:

> [O]ur circuit precedent makes abundantly clear that errors in state postconviction proceedings will not, in and of themselves, entitle a petitioner to federal habeas relief. See, e.g., Hallmark v. Johnson, 118 F.3d 1073, 1080 (5th Cir. 1997) ("[I]nfirmities in state habeas proceedings do not constitute grounds for relief in federal court."); Nichols v. Scott, 69 F.3d 1255, 1275 (5th Cir. 1995) ("An attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself.") (internal quotations omitted). Rather, we must find constitutional error at the trial or direct review level in order to issue the writ.

Morris v. Cain, 186 F.3d 581, 585 n.6 (5th Cir. 1999); see also Duff-Smith v. Collins, 973 F.2d 1175, 1182 (5th Cir. 1992); Anthony v. Cain, Civ. Action No. 07-3223, 2009 WL 3564827, at *23 (E.D. La. Oct. 29, 2009); Baham v. Allen Correctional Center, Civ. Action No. 07-4075, 2009 WL 3148757, at *3 (E.D. La. Sept. 30, 2009); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *6 (E.D. La. Dec. 11, 2008). Although application of this rule often proves harsh, the Fifth Circuit recently emphatically reiterated that it must nevertheless be followed, stating:

---

[37] State Rec., Vol. IV of V.

[38] State v. Hill, No. 2011 KW 1062 (La. App. 1st Cir. Aug. 29, 2011); State Rec., Vol. IV of V.

[39] State *ex rel.* Hill v. State, No. 2011-KH-2070, 2012 La. LEXIS 1619 (La. May 25, 2012).

We, as a federal appeals court entertaining a federal habeas corpus application, are without jurisdiction to review the constitutionality of [the petitioner's] state postconviction proceedings. Indeed, we are barred from doing so by our "no state habeas infirmities" rule. ... [O]ur hands are tied by the AEDPA, preventing our review of [the petitioner's] attack on his Louisiana postconviction proceedings, so we dutifully dismiss his claim.

Kinsel v. Cain, 647 F.3d 265, 273-74 (5th Cir.) (footnote omitted), cert. denied, 132 S.Ct. 854 (2011).

To the extent that petitioner is instead attempting to assert the underlying claim on which his state motion for an out-of-time appeal was based, i.e. that he was originally denied appellate review due to the errors of the court and defense counsel, that claim is procedurally barred for the following reasons.

The United States Fifth Circuit Court of Appeals has held:

A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision. To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims. This rule applies to state court judgments on both substantive and procedural grounds.

Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted).

In the last reasoned state court judgment concerning this claim, the Louisiana Supreme Court denied relief pursuant to La. Code Crim. P. article 930.8 and State ex rel. Glover v.

State, 660 So.2d 1189 (La. 1995).[40]  It is clear that article 930.8 and the Glover decision qualify as independent and adequate rules to support a procedural bar in federal court.  Glover v. Cain, 128 F.3d 900, 902 (5th Cir. 1997); see also Morris v. Cain, No. 06-30916, 2008 WL 3876479 (5th Cir. Aug. 20, 2008); Pineyro v. Cain, 73 Fed. App'x 10, 11 (5th Cir. 2003); Tolbert v. Cain, Civ. Action No. 08-435, 2009 WL 1309851, at *2 (M.D. La. May 11, 2009); Lott v. Travis, Civ. Action No. 08-1390, 2008 WL 4964797, at *7-8 (E.D. La. Nov. 18, 2008); MacCracken v. Louisiana, Civ. Action No. 07-9540, 2008 WL 2951214, at *10 (E.D. La. July 25, 2008).[41]

When, as here, the state courts rejected a petitioner's claims based on independent and adequate state procedural rules, "federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice." Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999).  In the instant case, petitioner demonstrates neither.

---

[40]  Article 930.8 sets forth the limitations period for filing applications for post-conviction relief, while the Glover decision held that an appellate court is not precluded from denying relief on basis of article 930.8 even if the lower court did not consider timeliness.

[41]  The Court is aware that petitioner argues that the state courts misapplied article 930.8.  As an initial matter, it is noted that the interpretation of state law is generally left to the state courts. Second, in any event, article 930.8 was correctly applied in this case.  Petitioner was convicted and sentenced on February 18, 2009.  Therefore, his conviction became final no later than thirty days later on March 20, 2009.  See State v. Counterman, 475 So.2d 336, 338 (La. 1985) (conviction and sentence are final upon the failure of the defendant to make a timely motion for appeal); La. Code Crim. P. art. 914 (a defendant has thirty days to appeal).  Subject to specified exceptions inapplicable here, Louisiana law expressly provides that "[n]o application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of Article 914 or 922 ...."  La. Code Crim. P. art. 930.8(A).  Because petitioner's motion for an out-of-time appeal was not filed until on or about April 1, 2011, more than two years after his convictions became final, it was untimely.

"To establish cause for a procedural default, there must be something *external* to the petitioner, something that cannot fairly be attributed to him." Johnson v. Puckett, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted). Here, petitioner has made no attempt to establish cause for the failure to raise this claim in a timely manner. "Absent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice." Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996).

Because petitioner has not met the "cause and prejudice" test, this Court need consider his claim only if the application of the procedural bar would result in a "fundamental miscarriage of justice." However, in order to establish that there would be a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges against him. Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted." Finley v. Johnson, 243 F.3d 215, 220 (5th Cir. 2001) (citations omitted). Petitioner has made not made that showing. To the contrary, he pleaded guilty to the charges of which he stands convicted, and he has in no way demonstrated that he is actually innocent. Therefore, he has not established that any miscarriage of justice will result from the application of the procedural bar.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** the unopposed motions to amend, Rec. Docs. 13 and 14, be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Glenn M. Hill be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[42]

New Orleans, Louisiana, this fifth day of July, 2012.



**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[42] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.